Please all rise. Hear ye, hear ye, this Honorable Fellow Court of the 2nd Judicial District is now back in session. The Honorable Robert D. McLaren presiding. Please be seated. Your Honor, this is the final case on the docket this morning. We have 14-1. We have 0-4-2-3. The people of the State of Illinois plaintiff appellee v. Zachary P. Reyes, defendant appellant. Arguing for the appellant, Mr. Christopher L. Berkey. Arguing for the appellee, Mr. David S. Freeman. Thank you. Mr. Berkey, you may proceed. May it please the Court. Excuse me. As I said, my name is Christopher Berkey. I represent Zachary Reyes on behalf of the State Appellate Defender. Mr. Reyes was just 16 years old when he committed a homicide in attempt offenses in this case at the direction and encouragement of older gang members. In the more than decade since, he's made rebelitative strides. Now, the question for this Court today is whether his 66-year de facto life sentence violates either the Eighth Amendment of the United States Constitution or the proportionate penalties clause of Illinois' Constitution. Now, before I get into it, I'd like to clarify based on the State's... You said the Illinois Constitution? Yes, sir. What about the U.S. Constitution? I refer to both, I think you're right. Either the Eighth Amendment or the proportionate penalties clause of the Illinois Constitution. And speaking of that, I'd like to clarify a point based on the State's brief, is that arguments 1, 2, and 3 of our opening brief raised three distinct constitutional arguments under both the Eighth Amendment and the proportionate penalties clause. Just to recap them very briefly, the first argument is that Mr. Reyes' de facto life term is unconstitutional because it was made without a determination that he is permanently incapable of rehabilitation. The second argument is that irrespective of a court determination, his sentence is unconstitutional as applied to him because he is not permanently incorrigible. And third, his sentence is unconstitutional because it was based on youth-related findings by the court that are directly contrary to Mill v. Alabama. Let me ask you this. Do we need to get into all of that if we find that the court did not follow our mandate? No. That's our first argument, Your Honors, is that this court found — this court instructed the lower court to — that it could only impose another de facto life sentence if it ruled that Mr. Reyes was, quote, beyond rehabilitation. And the trial court imposed another de facto life sentence and expressly, on the record, refused to make that determination. Based upon Jones. Based upon Jones, correct. The trial court and the State's argument is the trial court was required to follow Jones under the Supremacy Clause. You disagree with that, correct? I do, Your Honor, because it's not really a question — well, first of all, Mr. — rather, the trial court was not instructed to make some sort of legal finding contrary to Jones. It was instructed to — that it could only impose a certain sentence if it made a certain finding. And that was not the court order. The court only had jurisdiction to make that ruling. And if — It's interesting. Have you watched the oral argument in People v. Wilson? I have not, Your Honor, no. And the — well, in Wilson, which was argued on February 16th, the justices on the court, particularly Chief Justice Tice, asked why the Third District had not addressed Jones in their disposition because Jones came out before they issued their disposition to Wilson. And Wilson — it's parallel to this case, essentially. The argument is under both the Eighth Amendment and the Illinois Constitutional Proportional Penalties Clause, under both it requires either an explicit or an implicit finding of incurred debility. And the court will be addressing that. So my question is, should we hold this case until the Supreme Court decides Wilson because it will impact the result here? Should we hold the case? I don't think you need to hold the case, Your Honors. You certainly can. That's within your power. Because of the other sentencing errors. Because of the other sentencing errors. And I'd also like to point out that I guess this may depend on how the court interprets Holman, but even if Holman — Holman doesn't necessarily even require a formal fact finding or implicit finding. Well, and if you look at Holman and the cases that have come out since Holman, the court endorsed, he said, our holding in Holman is questionable. Because of Jones. Because of Jones. Correct, Your Honor. The court did say that. I don't think that's a binding decision on this Court, however. But I would like to invite this Court to consider the fact that, you know, under the Eighth Amendment, under Miller v. Alabama, for a juvenile offender who has a life sentence, the Eighth Amendment proportionality analysis does turn on whether they're actually permanently incorrigible or actually transiently immature. Montgomery called that a constitutional distinction. And our argument is that that is a distinction that the trial court has to make. The court has to make that determination. Now, the trial court under Jones may not have to make a formal fact finding on the record or make an implicit determination or finding that is clear from the record, but they still have to decide the issue because the whole proportionality analysis turns on that. Jones itself said that the reason we consider youth at sentencing is to, quote, because it is necessary to separate those juveniles who may be sentenced to life from those who may not. Well, on that point, there's no question that the trial court here considered youth and its attendant factors, correct? The court did consider those factors, yes. So the court's sentencing, just with regard to the Eighth Amendment, would appear to comply with Jones, correct? Well, no, Your Honor, not necessarily. Why not? It complies with Jones in the sense that the procedural requirement doesn't require a formal fact finding of permanent incorrigibility. But we have a rare situation here where the trial court affirmatively disclaimed the need to make the finding at all. This is not a silent record. We can presume based on Jones that the court properly applied the law. Well, the court did say you could look at my findings and interpret it that way. Well, the court in its written order said it, quote, not requires to make that finding. Then later in the motion to reconsider sentence of the hearing on that, it said it was, quote, not obligated to make that finding, and then said, well, some of my findings may have done that. So I don't think that represents a determination as to which of these two types of juvenile offenders Mr. Reyes is. Let me ask this. Why won't you just stick to the sentencing errors and ask for reversal now and then, you know, let the court, let the trial court deal with Wilson when it goes back? The sentencing error is pretty, on its face, significant, where the court says I place great weight on the factor that the defendants caused or threatened serious harm. Correct, Your Honor. And that is, we do, there are two other arguments in this case, and that is one of them. So with respect to that, the court at Miller v. Alabama still requires, and Jones still requires, proper consideration of youth. Why don't the new parole law and the administrative code cover that issue? Because now all offenders who are under age 21 when they're sentenced will have an opportunity to request Correct, or 20 years, actually. Or 20 years. 20 years. 20 years and then 10, 20 and 10. Correct. So under Eighth Amendment jurisprudence, the juvenile offender, the Eighth Amendment and Miller's protections apply to a juvenile offender unless their sentence, their life sentence, provides them with a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. That's the language of the U.S. Supreme Court. And Illinois' parole law doesn't provide that opportunity for two reasons. First, it is, Illinois' parole restrictions, the restrictions they place on juvenile parole, is outside the evolving standard of decency of the rest of the country as compared to national legislation. People v. Beck, the Fifth District, is, goes the other way, right? No, it doesn't, Your Honor. Well, I mean, it does refer to meaningful opportunity for release, but Beck doesn't really have anything to do with this issue. The issue in Beck, the question in Beck, was the defendant's argument that the opportunity for parole and that the good conduct credit in prison is irrelevant to an Eighth Amendment analysis. That was the issue decided in Beck. And so Beck doesn't consider any of the arguments that we raise in our brief. It doesn't consider the national consensus against Illinois' parole restrictions. It doesn't consider all the ways in which Illinois' parole law is incompatible with Miller. And Beck, importantly, Beck related to a completely different parole provision that provided earlier parole opportunities, more frequent parole opportunities, and more total parole opportunities. So Beck doesn't, I would say Beck is completely distinguishable from this case. And that you consider Beck, the new parole law, together with the legislation that requires, required the trial court sentencing somebody under age 21 to consider the relevant factors, correct? I'm sorry, so that again? The amendment to the Court of Corrections that requires a sentencing court to consider the various factors related to youth. Correct. There is a new sentencing statute that requires considerations for juvenile offenders. And the trial court complied with that in this case, correct? Our argument is that the trial court did not comply with that, Your Honor. Why don't you move on to, you were starting to talk about the factors, the sentencing factors that you feel would require us to reverse this case. Correct, Your Honor. So the first one being that it caused or threatened substantial harm, correct? Yes. So, right, the first would be that, I'm sorry, that it caused substantial harm? The court said that the murder or the attack murder, the issue of causing or threatening substantial harm. Right. That is one of the factors. We say that it's just an improper factor because it's a double enhancement. The court said that it put great weight, I think it says great weight or substantial weight on that factor, even though obviously when the offense is first degree murder or attack murder, both of those offenses necessarily cause or threaten substantial harm. Now, perhaps the state doesn't acknowledge or respond to that point in their brief. So that would be sort of just a basic sentencing error unrelated to the constitutional errors that this court could reverse on. Right. Absolutely. And what are the other ones? The other factors relate more to Miller v. Alabama. So the parole, I'm sorry, the court gave what it called great weight to the need to impose a sentence for deterrence factors. However, Montgomery v. Louisiana and several Illinois appellate court cases recognize that deterrence is not a factor that warrants much weight, if any weight, when you're sentencing a juvenile offender because juvenile offenders, their immaturity makes them less likely to consider the consequences of their actions. There's actually courts that have reversed for a new sentencing hearing based solely on the fact the court overemphasized deterrence in giving a sentencing, in giving a life sentence to a juvenile offender. In addition, the court gave substantial weight, what it called substantial weight in aggravation, to the fact that this offense was related to gangs. Now, of course, negative influences outside pressures, peer pressures, are mitigating circumstances for juvenile offenders. Well, that's like mental health issues. It can be both an aggravating factor or a mitigating factor. Correct? I disagree with that, Your Honor. Why is that? I think because when we're talking about mental health issues, could be aggravating or mitigating based on whether those mental health issues can be remediated as they go. Well, it depends upon how that mental health, whatever the disability is or whatever the mental illness is, affects a person's behavior. Correct? Sure. Yes, sir. So when you're taking or getting orders, and by the way, with respect to orders, other than the defendant's own self-serving testimony, what evidence was there that he was acting on orders? Well, I would say orders is a strong word, but he was acting on, I forget, Salazar, one of the state's Latin King witnesses, the highest-ranking one who testified, said that he overheard the driver encourage Mr. Reyes to fire the gun and gestured at him to fire the gun out of the car when that happened. And I'll also point out that we're not just talking about peer pressure and influence on the exact moment of the offense. We're talking about the fact that Mr. Reyes was recruited into this gang when he was just in middle school. I mean, we can't hold people responsible or as responsible as they would be as an adult. His uncle encouraged him not to join the gang, and he disregarded that advice. Sure, but he was still a juvenile when that happened, Your Honor. He was still a middle schooler when that happened. Let me ask you this. In People v. Robert Jones, our Supreme Court stated that Miller's additional protections apply only where a trial court lacks or refuses to use discretion in sentencing a juvenile to life or a de facto life sentence. Why should we not follow People v. Robert Jones? I think People v. Robert Jones is interpreting Jones v. Mississippi. Is that correct? Yeah. Jones v. Mississippi certainly doesn't speak at all, I think, to issues two or three of our brief. Jones v. Mississippi does say that discretion, as long as the court has discretion to impose a sentence less than life, then the failure to make a fact-finding doesn't really matter. That's not what we have here. Say that again? That's not what we have here. No, Your Honor. But Jones did not give courts discretion to consider the Miller factors incorrectly. The courts, I think Jones is premised on the presumption that, you know, in the face of a silent record, we presume the court followed the law, which is something that Illinois has held for a long time. But if the record demonstrates that the court made findings that are contrary to Miller, then I think that those findings, especially when they result in a de facto life sentence, require a reversal for a new sentencing hearing. Now, some of the other factors that we're talking about here, in addition to consideration of the gains, is that the court made a determination that there was no reason to believe that Mr. Reyes had difficulty assessing the risks and consequences of his actions. The adult risk assessment. Is that what you're talking about? That's not what I'm talking about, but I'd be happy to, Your Honor. No, go ahead. I'm talking about the court's finding that this was not, that Mr. Reyes was not the type of juvenile who had difficulty with assessing risks and consequences. And based on the context of the court's comments, it appeared that the court believed that it had, that some facts had to show that. When instead, Miller teaches that it is a hallmark feature of all juvenile offenders. And even apart from that, we have the fact that the court imposed a life term, despite making an explicit finding on the record that credited some of his rehabilitative efforts. Right. And so, and that's directly contrary to Miller. As long as a juvenile offender has some capability for rehabilitation, it cannot be sentenced to a life term. Well, but rehabilitation and incorrigibility are two different things, right? Well, I think permanently incorrigibility means to me, the way I interpret that, it means that they are permanently incapable of rehabilitation. So no rehabilitation possibilities, even if the court finds there are some factors where he may be rehabilitated, then he can't find incorrigibility, is that what you're saying? I think that the court, I'm sorry, may I answer your question? I think if the court acknowledges that the juvenile offender is capable of rehabilitation, then they cannot impose a life sentence in making that finding. And there are courts that have reversed for a new sentencing hearing based on court findings acknowledging rehabilitation, but nonetheless giving a life sentence. Okay. Thank you. I have one other question. Oh, sure. Talk to me about the adult risk assessment and how the court was either incorrectly or correctly applied that. Right. So the court accredited the risk assessment, said it was relevant and reliable evidence in aggravation. The problem with that is that the risk assessment, and all risk assessments in Illinois, as I understand it, or at least the one that was applied here, are designed for adults. They don't take juvenile considerations into account when you're discussing the risk to returning someone to the community. And in particular, the risk assessment here, as testified to by the person that gave the assessment at the sentencing hearing, treated Miller's youth-related mitigating factors as aggravating factors weighing against parole, particularly his environment where he grew up, his educational opportunities, the fact that he was financially supported by his mother, and his peer associations were all viewed as aggravating factors weighing against parole, when in fact those were factors he couldn't control when he was a juvenile offender. And again, Miller teaches that negative influences and outside pressures are mitigating factors when you're looking at juvenile offenders. I want to ask you about victim impact evidence. What relevance or how much does victim impact evidence, which the trial court must consider in imposing a sentence, what role does it play when you're sentencing a juvenile under age 18? I think that seriousness of the offense and the... And the defendant's role. The defendant's role. And many of the cases, and in fact, I think, Griffin, in some of the cases you cite, the defendants were accountable, not the principal. Here the defendant's the principal. He shoots 11 rounds into the other vehicle. Correct. Seriously injures one and kills another young man who was a great kid, a star soccer player, an A student. And that life, his life, and the lives of his family were shattered. Absolutely. So how much weight should a judge give to the victim impact statement in a case like this? I think, I guess the question is how much weight should they give in deciding whether or not to give a life sentence? Is it more important than a defendant's potential for rehabilitation or equally relevant? I certainly think it is a consideration a judge can weigh. But when we're talking about Miller, when we're talking about giving a life sentence to a juvenile offender, Miller itself said, even children who commit heinous crimes are capable of change. That's a quote from Miller. Being capable of change does not mean a court cannot sentence a defendant to life, does it? Of course, right. But to give a sentence... But it seems to be your argument that if the defendant has any potential for rehabilitation, he cannot be sentenced to life. That's not the law, is it? I think it is the law, Your Honor. I think if the court finds... Where has the court said that? Because the United States Supreme Court has... I've read Miller several times. I'm sure, Your Honor. I think what Miller says, though, what Montgomery says, and what even Joe versus Alabama says, is that even if you consider a juvenile's age and you consider the seriousness of the offense, it violates the Eighth Amendment to impose a license on a juvenile offender if they are, unless they are permanently incapable of rehabilitation. In Miller, the issue was a statutory scheme, not the discretion that a trial judge has, correct? Right, Your Honor, yes. And there's a big difference, isn't there? Sure, yeah. I mean, we're talking about a discretionary scheme here, Your Honor. But we're also talking about, particularly for the second and third issue... But the language you quoted from Miller has to do with the statutory scheme, not a discretionary sentence imposed by a court, correct? Well, if you're talking about Jones versus Mississippi, specifically quoting Montgomery, said that even if you consider a trial, even if you give discretion, it still violates the Constitution to impose a life term on a juvenile offender who's not permanently incorrigible. Jones made it clear that they were not talking about an as-applied challenge to a juvenile offender sentence. And here, where the trial court specifically acknowledged and credited at least some of Mr. Reyes's rehabilitative efforts, and where the record shows lots of other rehabilitative efforts that are not disputed by the State, here the record necessarily demonstrates that he is not one of the rare juvenile offenders who qualifies as being permanently incapable of rehabilitation in his lifetime. I have a question. Are there any other questions? The legislature passed an amended statute or a statute that talks about factors relative to the sentencing of juveniles. Correct. Insofar as that statute is concerned, is it violative of the Constitution or the federal Constitution if more than 40 years is assessed against the juvenile defendant while applying the factors and the exercise of discretion by the trial court? If there is not a concomitant determination of an unavailability to rehabilitate. So is that actually a question asking whether a court can sentence a juvenile? It's a sub-arguendo that the court applying the factors and imposing a sentence based upon factors enumerated in the statute. If the trial court enters a sentence in excess of 40 years, is it not by definition a de facto life sentence? It is a de facto life sentence. And if it is a de facto life sentence, doesn't he also, in addition to the statute, make additional findings that the Supreme Court says relating to incorrigibility or the lack of ability to rehabilitate? Right. So as I understand your question, is giving it a de facto life sentence implicitly established a finding of permanent incorrigibility? Is that your question? You've answered my questions. I would say no, Your Honor. Thank you. Thank you. My line of inquiry was to try and point out, at least to myself, that the factors set forth in the statutes are not determinative of whether or not a 40-year sentence is still a de facto life sentence and whether or not the constitutional limitations still apply. And you answered my question. All right, Your Honor. Thank you. You'll have an opportunity to make a point. We get that same glazed-over look when we're speaking here, too. Mr. Friedland, you may proceed. And can I start the inquiry off with what is your answer to my questions to Mr. Gerke? I think that the – Madam State Attorney Friedland, I represent the people of the State of Illinois.  May it please the Court. Good morning. You're asking, without trying to mimic opposing counsel's glazed-over look, by consideration of the factors in the Illinois statute which codified the Miller factors, I would point out, number one, in that codification of the Miller factors, nowhere is it codified that there needs to be a finding of permanent incorrigibility or the defendant needs to be found beyond a limitation. The Illinois legislator had that opportunity to put that in there, and they didn't do that. That finding arose in Holman. Obviously, Your Honor's had several questions about Jones' impact on Holman, but I would like to take a step back, and I do not think that you need to address that question. This case in the defendant's sentence is constitutional and comports with Miller, and the Eighth Amendment for the simple reason that he's given a meaningful opportunity to release onto parole. Holman, and all Miller, and all the other cases that came before it, discussed sentences of life without parole. So in order for Your Honor to even reach the issue of Jones and its impact on Holman, and whether Holman is overruled, and as Your Honor indicated, that question, as it relates to the Eighth Amendment only, will be addressed shortly in People v. Michael Wilson. Well, I think the Court is also going to consider its holding in Holman in light of the proportionate penalties clause, because that argument was made by I should certainly hope so. Having listened to the oral argument, they were requesting a remand for further briefing and consideration on the issue of Jones' and Holman's impact on the proportionate penalties clause. But as far as the Eighth Amendment issue, and that is what Your Honor has remained in this case for. Your Honor has made a finding that the defendant's sentence, following the 2018 sentence, violated the Eighth Amendment under Holman's reading and interpretation of Miller. And that was the remand. You required that the trial court make a finding of permanent incorrigibility or permanent rehabilitation. And at the time, that made perfect sense, because that was the law. Well, subsequent to Your Honor's mandate, the law changed in two respects. And the first one, which goes back to my initial argument, the first change in the law is that the evolving standards of the community, the Illinois General Assembly and legislature enacted the new parole statute, which addresses and certainly codifies the exact concerns and tenets of Miller. And that parole statute absolutely provides the defendant with a meaningful opportunity for release. And I don't think counsel can point to anything that says that a trial court's life sentence or discretionary life sentence that affords a meaningful opportunity for release violates the tenets of Miller. But let's go back and talk about how the court violated our mandate. Sure. I mean, even if the reviewing court gives the mandate to the lower court to do something that is maybe not correct at the time, doesn't the court still have to follow the mandate? My opposition is that the express, your mandate said that, and the Holman said that it was required for them to make that permanent incorrigibility finding. Correct. The Supreme Court, not an interpretation of the Supreme Court, the Supreme Court itself came out and specifically said no, that finding is not required. But Jones also said that it didn't bar the states from requiring findings themselves, correct? Sure. So, you know, how does, how is then that not violative of our mandate? Well, under the Eighth Amendment jurisprudence, that requirement is gone. If you want to attach the, your Honor's upset, the mandate was not followed, I understand. The trial court didn't find it. But, number one, we can look to the trial court's reasoning that, number one, even though the trial court pronounced that it wasn't following the mandate based on the holding in Jones. Your argument is that the Supremacy Clause requires the trial court to follow Jones v. Mississippi. Yes. And the court, our court, our Supreme Court, has already called into question, even before Wilson, the argument in Wilson, called into question its holding in Holman. Yes. I would also argue two additional parts. Even though the trial court said, I'm not following this because I'm not required to based on the holding in Jones, your Honor's going to affirm this sentence based on any reasoning. And the trial court was not required to make that finding because of the parole statute. And we can reverse it on any reasoning, too. Certainly. So let's talk about those reasons why it could be, or may be, or why defense is asking it to be reversed. The sentencing factors, the double enhancement. Do you want to talk about that? How is it not double enhancement? The trial court listed out a 17-page sentencing memorandum where it went through each of the factors. It listed every single factor. In ruling on a motion to reconsider, the court said, and I quote, I place great weight on that factor, clause or certain serious bond. How can you argue that that is not reversible error when a court says, I place great weight on a factor that was inherent in the offense? I would point out that the ultimate ruling of the trial court then said, I've attempted to balance all of the factors, and it went through all of the individual factors. While it gave weight to one factor, it didn't necessarily give undue weight to that factor, and it still balanced all the remaining factors and found out and said in its analysis that it was exercising its discretion in balancing all of the factors. If it's improper to exercise a factor, how is that ameliorated by the statement that you just related? I'd argue first that it wasn't necessarily a double enhancement, that he threatened the threat of serious harm. The way that that could be considered were in that the defendant shot in the direction of a vehicle he knew to be occupied there by placing other people and other citizens in the community in danger. The fact that he was charged and sentenced for one of the murder attempts. You didn't make that argument in your brief. Well, I'm relying on that. When I was looking for that argument in your brief, he threatened the whole neighborhood. Right. But that's not an argument that you made. I made the argument that the trial court didn't improperly consider factors, that the defendant's – I did contain in my brief that the court properly exercised its discretion and that it did balance all the factors appropriately. Defense counsel's contention notwithstanding, I addressed that nonspecifically, but said that the trial court didn't misweight or improperly consider any factors. And the trial court did not delineate what he was referring to. No. Had he said that, maybe you'd have an argument. But that's not what he said. So should we hold this case for Wilson or rule on the case based upon the improper consideration of sentencing factors? I don't think you need to hold it for Wilson based on my prior argument that Wilson's not going to be controlling at the initial point. The sentence is within the trial court's discretion, and this was not a life without parole sentence, which given that this defendant does have a meaningful opportunity for release, the sentence fell within the applicable statutory range and does not need to wait for Wilson. If your honors decline – the only reason this case would need to be held for Wilson is if you decline to find that this parole statute provides a meaningful opportunity for release. Defendant's arguments – I briefly addressed defendant's arguments that it does not. I'd say he compares the parole statute to sister jurisdictions and says that the 20-year mark does not offer a meaningful opportunity for release. Note one in Montgomery. In Montgomery, the United States Supreme Court cited approvingly a Wyoming statute that said that the 25-year statute cured any constitutional problems or issues with respect to a life sentence. It's under the 40 years. Yes. Additionally, 20 years is the statutory minimum for the offense. What defendant's asking this court to do is carve out an exception below the statutory minimum for the offense of murder. He distinguishes Beck as being a non-homicide offense that grants the opportunity for parole in 10 years, but Beck addresses the parole statute itself and says that the parole statute is geared exactly to providing these juvenile offenders with an opportunity for release. In fact, the statute goes – so I don't see how your honors could conclude that this parole statute does not provide a meaningful opportunity for release. It's specifically geared, provides defendants, the rest of the parole board, to consider the diminished culpability of youthful offenders, the hallmark features of youth, and this is the important part, any subsequent growth and maturity of the youthful offender during incarceration. It appoints counsel on behalf of indigent defendants to assist in their preparation of their parole hearing. At the time of the sentencing hearing in this case, the defendant was still a Latin King. Yes. Correct. And he had not yet – he had earned some credits and had done some programs, but he had still not earned his GED, correct? That's correct. Additionally, the trial court noted on the re-sentence that the defendant still had not shown remorse for his offenses. He didn't find that the defendant's letter and statement and allocution was a true reflection of remorse. And additionally, it cited the inaggravation of the defendant's subsequent perjury in jail infractions. The legislature placed some new youth-related sentencing factors and found some new factors for sentencing. And in this case, the court talked about deterrence. He gave great weight on his inability or on the fact that this sentence was important for deterrence. But is that improper? Was that improper for the court to do that? I believe that's improper. As Justice Brickett indicated, the gang evidence cuts can cut both ways. The state, of course, submits that gang evidence and gangs in society. The shooting was a 16-year-old defendant fired into a moving vehicle, 11 shots, simply because he was alleged that he was disrespected for gang violence. And I don't think it's improper for the court to have considered the deterrence and the nature of that violence to deter such activity, that that was a consideration of an improper fact. Counsel? Yes. It seems to me that what you argued in responding to my question that caused the glazed eyes relates to your belief, and correct me if I'm misinterpreting your belief, that the new statute regarding sentencing factors mitigates, remediates, and essentially turns into a de minimis problem the de facto 40-year sentence without a finding of incorrigibility. Is that correct? I would believe that there is no finding of permanent incorrigibility required for a discretionary life sentence where the sentencing court, the trial judge, has the discretion to sentence the defendant to something less than 40 years. So in this case, there was no mandatory. The defendant wasn't boxed in, as I think the court in Griffin noted. Go ahead, I'm sorry. Because the trial court here had the discretion to sentence the defendant to something less than 40 years, meaning a non-de facto life sentence, and had the discretion not to, as long as it weighs the factors set forth in the juvenile sentencing statute. What would have been the minimum sentence that he could have sentenced the defendant to? The minimum in this case was 32. I'm sorry? Thirty-two years was the minimum. Okay. Twenty-five for the murder, and six for each attempt at murder to run consecutive. And dropping the aggravating discharge firearm? The enhancement subsequent to the juvenile sentencing statute is now discretionary, and the trial court chose in its exercise of the discretion to add on the 25-year. So if there had been a sentence less than 40 years, then a de facto life sentence wouldn't have come into even contention. But if the sentence was more than 39 and 364 days, then would you agree that the issue of a de facto life sentence comes into effect or is relevant and material? It's not relevant as long as that parole statute is in existence. The court in Dorsey said that it considered the argument, analyzing whether or not good conduct should be applied to determine whether a sentence does constitute a de facto. The Dorsey code also indicated that as long as a juvenile offender is provided an opportunity for release under the 40 years, then that sentence comports with MILAC. And you, I believe, said 10 minutes ago that this is all resolved because of meaningful access to parole at 20 years. Did you not say that? I did say that. What do you mean by meaningful? Meaningful opportunity for release? Well, the United States Supreme Court has said that meaningful opportunity for release does not mean a guarantee of release. It's not that the defendant must be released or has an eventual guarantee of freedom. It's simply that the Supreme Court said that as long as their discretionary parole system provides the defendant with that meaningful opportunity for release. And Dorsey compared the two as well, noting that the good conduct credits may be even more advantageous than its discretionary parole system in deciding whether a sentence is, in deciding whether there is a de facto opportunity for release. Has there been any judicial decision approving that the parole system for juveniles is meaningful in this state as yet? I'd point to Beck. I would point to People v. Beck where it specifically said that the 5th District found that the new parole statute provides a meaningful opportunity for release. And did they explain why it was meaningful? Their reasoning was based on the, I believe it was Montgomery that said a discretionary parole system allows for, satisfies a constitutional violation, satisfies any constitutional violation for a de facto life sentence. And is the discretion factored or is it set forth in a manual or in case law such that it can be measured to determine whether or not it is reasonably meaningful or whether it's properly meaningful or whether or not the parole board screwed up? I can't point to a case as of yet since the statute was enacted in 2019 for the juveniles. Okay. I have no further questions. I have a few questions. The trial court found that the evidence was that Mr. Rhea, that ADHD was impetuous, would act impulsively. He would suffer adverse consequences for those acts. But then it immediately found that despite his low average income, his range of functioning, there was nothing to indicate that he lacked the ability to consider risk and consequences of his behavior. Isn't that inconsistent? I don't believe that would be inconsistent. He certainly could be impetuous but still be intelligent enough to understand what he's doing. Certainly somebody could be intelligent and yet also impetuous or argumentative. With a low IQ, with a very low average IQ. That's what they found with this debate. Well, at this stage, I believe not. The trial court gave that the way that it gave that. Okay. And you're not here to – your honors have to follow that. As long as it wasn't abuse of discretion, I'd argue that the trial court gave that whatever way the trial court gave that. Would you agree that what the trial court did was it said it was the same, only different? The defendant, when he gave his original statement and elocution, and this was with respect to the trial court's finding that he didn't fight a true remorse, the defendant did say, referring to the victim's friends, so I'm saying his friends are the ones to blame for the case. They are the ones who triggered this to happen by throwing gang signs up and down at our car. And later on, he again says it was his friends that are the ones to blame. So he blamed the people in the other car. Yes. And this defendant was the principal shooter. He shot 11 times into the car just because he was disrespected. I don't think under – well, under the Eighth Amendment, the trial court did not – Well, under the Eighth Amendment, and certainly the sentence doesn't shock or offend the notions under the proportionate penalties clause. So we'd ask Your Honors to affirm the sentence. I have one other question. Yes. The court at one point said that if he could, he would have imposed a longer sentence, but he was prevented from doing so by statute. But the court, in fact, sentenced the defendant to five years longer on the first-degree murder than the original sentence. Was that improper? Well, the court did – the most recent resentencing, that's inaccurate. The defendant was initially sentenced to 20 on the murder in 2012, and the first resentence that increased to – in 2008, March of 2018, it was increased to 25 years. The five-year increase, the bad behavior that the trial court noted, what the State points out in the brief, occurred prior to that first resentencing. The perjury of the affidavit and the jail infractions occurred in 2016 prior to the resentencing. So the trial court was within its discretion in considering that aggravating evidence and raising the offense to an additional five years. At the resentence, the third resentence, there was no increase for the offense. Thank you, Your Honors. Thank you. Thank you. Mr. Gerke, you may proceed with your rebuttal. The first thing I'd like to address is counsel's – opposing counsel's sort of concession that there's a double enhancement here. But counsel tried to argue that, you know, well, it was just weighed within the balance of the factors. The prejudice question for when an improper factor is considered is whether that factor was so insignificant that it could not have possibly raised the sentence or something very similar to that language. So it doesn't matter what the court said. The court said I gave great weight to that factor. It was improper. When he put it on the scale, it weighed a lot more. Right. And because the court made that express finding of how much weight he gave it, I don't think this court can find that it had such insignificant weight it didn't affect the sentence. But if we sent it back for that reason, the trial court could clarify how much weight it actually did give in consideration of other factors like victim impact, the defendant's other behavior, and also the attendant characteristics to youth, correct? I suppose so, Your Honor. I would argue that if the court all of a sudden decides that this does not warrant significant weight, I think that would be – I think I could re-weigh and not consider that factor improperly. Correct. In your brief, you request that we send this back before another judge. I did, Your Honor. You didn't make any argument that from the record we could show bias, that you can demonstrate bias or prejudice by the trial court? No, Your Honor. Our only argument was just that because this judge was not the judge that actually heard the actual trial and that under Hyder, I think it is, the court – in that case, the court remanded, even though there wasn't evidence of bias, just to eliminate any risk of impropriety. If we were sending cases back before a different judge just because a judge improperly or failed to properly follow our mandate, we'd probably run out of judges, including yours truly. And that would be the case, Your Honor. But regardless, we ask that Your Honor return this to the trial court for a new sentencing hearing. I'd like to briefly address the parole issue because counsel made the point that, you know, that the parole statute could establish a meaningful opportunity for release. I'd like to first address a misstatement by opposing counsel. Our argument at no point ever argued that the defendant should receive a sentence less than the minimum 20 years. You really can't have an opportunity for parole in less than 20 years. In fact, I would acknowledge that most of the country actually provides the initial parole opportunity for juvenile homicide offenders around 20 years. So that's not what our argument is. What our argument is, is that everything else about the parole statute or key factors about the parole statute are actually contrary to the rest of the country. Illinois provides just two parole chances 10 years apart, as Your Honor mentioned before. The rest of the country provides, allows for unlimited parole chances every couple of years. And so the 20 years is under the 40 that is like, what am I trying to say? De facto life sentence. Right, so the question is whether the defendant was given a life sentence that provides a meaningful opportunity for release. So he still has a life sentence. The question is whether that life sentence provides a meaningful opportunity for release. And when deciding that issue, you have to look at, for proportionality reasons under the Eighth Amendment, you have to look to the evolving sense of decency in our country. And that's measured by national legislation. We are not legislators. We don't legislate. We don't make policy. Your argument would have to be that the new parole provisions are unconstitutional. No, Your Honor. Then why are you making this argument? Our argument is not that the parole provisions are unconstitutional. Our argument is that imposing a life sentence in Illinois on a juvenile offender remains, that juvenile offender is still subject to the protections of Miller because the parole statute essentially doesn't go far enough in comporting with Miller. It does not require a finding of unconstitutionality of the parole statute. It just simply requires a finding that Mr. Reyes's de facto life sentence does not provide him a meaningful opportunity for release, and therefore the Miller protections apply to him. And in addition to the sort of national legislation, which, again, the State doesn't dispute that the rest of Illinois is far outside the step of the rest of the country on this, is the fact that Illinois' parole statute doesn't comport with the requirements of Miller. It doesn't require sufficient consideration of youth as Miller requires. And perhaps the most prominent reason is because the parole decision turns on the seriousness of the offense. It says that while opposing counsel mentioned some youth-related factors that might be considered, it says you consider, the quote, consider those factors. But when you're talking about the parole determination, it says the parole board, quote, shall not parole a juvenile offender if they would deprecate the seriousness of the offense. So I'm not saying that seriousness isn't a factor to consider, but Illinois' parole statute puts its thumb on the scale and makes that the determining factor, even though Miller says, again, that juvenile offenders, even juvenile offenders who commit heinous crimes, are capable of rehabilitation. So I think that because the parole statute, I'm sorry, go ahead. No, when you mention that, there is a long line of cases, both the United States Supreme Court and Illinois Supreme Court cases, that continue to say the most important factor in sentencing continues to be the seriousness of the offense balanced against all the other factors. Seriousness of the offense is still a very important factor. Correct? Correct. But it can't be the determining factor. Right. It can't be in and of itself the determining factor. And I would argue that of all the cases your Honor is referring to, are not juvenile cases, are all pre-Miller v. LMAC. Pre-Miller cases, but the, and the court, our Supreme Court, has looked at the level of responsibility. People who are accountable are viewed differently than the principal offender. Correct? Correct. The individual culpability is different depending on if someone is accountable or not. Right. Correct.  Any other further questions, Your Honor? Your Honor, for the reason we stated in our brief, we ask you to find that Mr. Urias's 66-year de facto life sentences violates the Eighth Amendment, or if not that, then the greater protections provided by Illinois's proportionate penalties clause. Thank you. Thank you. We will take the case under advisement, and I can't guarantee that it will be rendered in an apt time. It probably will be rendered sometime after Wilson comes down. Thank you. Thank you. Nice job. Court is adjourned.